GEORGE W. MEADER, v. H. B. ALLEN, Appellant.

**Contract to Sink Well:** CONSTRUCTION OF. By the terms of a written contract to sink a well, plaintiff guaranteed a reasonable supply of water in the well, the "supply to be determined by a test of thirty days use thereof and therefrom by the undersigned," and the use of the well for more than thirty days without giving notice to plaintiff of a lack of water was to be conclusive proof of a reasonable supply. *Held*, that the sufficiency of the supply was to be tested by the owner by his own means.

SAME. Plaintiff agreed to sink a well at seventy-five cents per foot for the first one hundred feet, one dollar a foot for the second one hundred feet, and the balance at twenty-five cents per foot additional for each additional one hundred feet. A supply of water was found at a depth of forty feet, but not in satisfactory quantity. *Held*, that plaintiff was justified in drilling to a depth of four hundred and thirty-five feet and charging therefor.

SAME: *Rights under.* Plaintiff agreed to sink a well for defendant at a price named per foot, but, in the event of his failure to get a sufficient supply of water, he was to forfeit his labor, but be paid for casing five inches in diameter. After drilling four hundred and thirty feet without finding water in sufficient quantities, plaintiff abandoned the work until about two years from the time the contract was made, when he drilled seventy-eight feet fur-

ther, and a sufficient supply was found.    Meanwhile, defendant had procured another well to be sunk and obtained all the water he needed.    *Held*, that plaintiff, having failed to complete the well within a reasonable time, was only entitled to recover for so much of the casing as was five inches in diameter.

**Evidence:**  PAROL VARIANCE:    *What is not.*   In an action upon a written contract to sink a well, and to furnish the necessary casing therefor, parol evidence is admissible to show the size of casing which it was verbally agreed should be used; the size not being stipulated in the contract.

SAME.    In an action upon a written contract to sink a well, and to furnish the necessary casing therefor, for a compensation named, parol evidence is not admissible to show that a pump and tubing were to be furnished for the same compensation.

**Transcript;**  CERTIFICATE BY JUDGE:  *Private stenographer.*   The fact that the stenographer who reported the evidence at a trial was not the official stenographer, and was not sworn in, is not ground for striking all the evidence from the record, on appeal, on the ground that it had not been properly preserved, where the transcript of the testimony is properly certified by the trial judge.

*Appeal from Osceola District Court.*—HON. F. R. GAYNOR, Judge.

WEDNESDAY, FEBRUARY 7, 1900.

ACTION in equity to recover on a contract the price for sinking a well, and to establish a mechanic's lien therefor. From a decree in plaintiff's favor, defendant appeals.— *Modified.*

*O. J. Clark* and *Boies & Boies,* for appellant.

*C. M. Brooks* and *Milt H. Allen,* for appellee.

WATERMAN, J.—There is a motion to strike from the record all of the evidence, on the ground that it has not been properly preserved.    The stenographer who reported the case was not the official reporter, and was not sworn, but the judge appended a proper certificate to the transcript of the testimony after the shorthand notes had been transcribed.    This was enough.    The reporter was

an officer *de facto*. It can hardly be the duty of parties litigant to investigate before a trial the right of the court officials to act in their several capacities. The motion will be overruled. *Etter v. O'Neil*, 83 Iowa, 655-657.

II. The contract under which the well was sunk is as follows:

"The undersigned hereby employs Geo. W. Meader, of Sibley, Iowa, to drill a well upon the following described premises, to-wit:*   *   * quarter, Sec. 11, township 99, 41, state of Iowa, and agree to pay therefor the price as follows: For the first one hundred feet, seventy-five cents per foot; for the second one hundred feet, one dollar per foot; and for the balance, twenty-five cents per foot additional for each additional one hundred feet. It is understood and agreed that, in addition to the foregoing prices, the undersigned agrees to pay for all casing necessary to be used in said well. It is further agreed that the said Geo. W. Meader guarantees to obtain a reasonable supply of water in the well, and the supply to be determined by a test of thirty days' use thereof and therefrom by the undersigned; and, at the expiration of said thirty days after the completion of the drilling thereof, a reasonable supply of water has been obtained, then the undersigned agree to make payment to the said Geo. W. Meader, at Sibley, Iowa, the sum of money which will then be due in accordance with the aforesaid prices. It is distinctly understood that the undersigned is to furnish the casing at his own proper expense, and should the above-mentioned supply of water not be obtained, and the well be abandoned by the said Geo. W. Meader for the reason of being unable to obtain water, then and in such case the said Geo. W. Meader forfeits the labor of the drilling, but not the price of the casing. It is also agreed that use of the well for more than thirty days without giving written notice to said Meader of lack of water shall be conclusive proof of a proper and reasonable supply. It is further agreed that the

undersigned is to pay the said Meader the sum of —— in addition to the above prices for the setting over and continuing an old well. This agreement not binding unless approved by said Geo. W. Meader in writing hereon. Well casing is to be thirty-four cents per foot. Dated this 4th day of July, 1895.

[Signed]    H. B. Allen.

"Approved, Geo. W. Meader."

The first defense is that a part of the contract was oral. It is said it was verbally agreed that five-inch casing should be put in the well by plaintiff, and that he should furnish a pump and tubing; that he has not complied with this part of his contract, for some of the casing used is but two and one-half inches in diameter, and he has failed and refused to furnish a pump. The evidence offered to establish this oral agreement was to the effect that, immediately prior to the execution of the contract, plaintiff showed defendant some five-inch casing, and told him that was the kind he intended to use. We may say in this connection that both parties construe the contract to mean that plaintiff was to procure and put in the casing, and defendant was to pay therefor. The evidence was admissible. Its reception. does not contravene the well-known rule that parol evidence may not be received to modify, alter, or contradict a previous or contemporaneous written agreement. The effect of this evidence was explanatory only. It tended to show what size the casing was to be for which defendant agreed to pay thirty-four cents per foot. *Jackson v. Mott,* 76 Iowa, 263. The evidence offered to show that defendant agreed to furnish a pump and tubing was of a different character, and cannot be considered. It manifestly tends to increase plaintiff's obligation by adding to the liability imposed upon him by the terms of the writing.

III. It appears, under the terms of this contract, clearly, to have been defendant's duty to test the well by

means of his own, in order to satisfy himself as to the water supply, and this he has never done. According to the tests made by the plaintiff, the evidence sustains the finding that the supply of water finally obtained was sufficient to comply with the contract demands.

IV. Another defense is that in sinking the well, at a depth of about forty feet, plaintiff passed through a stratum of gravel, in which an ample supply of water was found, but that he continued drilling to a depth of about four hundred and thirty-five feet, and now charges therefor. The evidence is not sufficient to establish that water in a satisfactory quantity could have been obtained in the stratum of gravel.

V. Still another defense is that when plaintiff stopped work on the well in November, 1895, a sufficient quantity of water could not be obtained from it; that the tests applied by plaintiff failed in this respect; that defendant then procured a well near by to be sunk deeper, and from this has since secured all the water he needs. The facts are that plaintiff, deeming the well completed, stopped work upon it at the time stated. Afterwards, in July, 1897, and subsequent to the bringing of this action, being satisfied that the water supply was insufficient, plaintiff, without defendant's knowledge (for the farm was in possession of a tenant), sent men who drilled the well some seventy-eight feet deeper, thereby procuring a sufficient quantity of water. This defense is set up in part as an estoppel, and in part it is based on the thought that plaintiff failed to complete the well within a reasonable time, as he was under obligation to do. Plaintiff meets this claim by saying that he acted in good faith in the matter; that when he ceased work in November, 1895, he supposed the well complied with the contract demands; that he never learned the contrary until in July, 1897, and then at once set about completing the work. This claim is hardly sustained. While possibly plaintiff was under no obligation to test this well, he did so on the completion of

the work in 1895, and found the water supply insufficient. His testimony on the subject is: "The pump was sent here to be tried and see if it would do the work. I had it put in the well, and my men went out then to test the well,—went out there with the pump and tried to work it. I don't know whether they could get water out of the well. I wasn't there. The suit was commenced after the pump was put in, and after I tried to get water from the well." Bradley, who was in plaintiff's employ, working on the well, says all attempts to get water from the well in 1895 were practical failures; that on one test perhaps half a barrel of it was procured. Under these circumstances, it can hardly be said that plaintiff acted in good faith in assuming the well to be completed according to contract. Plaintiff was under obligation to complete the work within a reasonable time. *Blake v. Brown,* 80 Iowa, 277; *Curtiss v. City of Waterloo,* 38 Iowa, 266. He did not do this. The well was not completed until July, 1897, and not until after defendant had been at the expense of sinking another well. It will not do to say that plaintiff may have thought the fault to be with the pump, and not with the well. He made a test, and failed to get water; and he was not acting in good faith if he then declared the well completed, without ascertaining why water could not be obtained. We think it clear that plaintiff is not entitled to recover for the work of drilling the well.

VI. Under the contract, plaintiff was to recover the cost of the casing, in any event. In 1895, when plaintiff ceased work, the well was four hundred and thirty-three feet in depth. The first four hundred feet was five-inch casing; the lower thirty-three feet, four and one-half inch casing. When the well was sunk seventy-eight feet deeper, in 1897, it was tubed with two and one-half inch casing from top to bottom. This was placed inside the the other casing. So that, as it stands, the well is in great part doubly cased. In our opinion, plaintiff is entitled to

recover only for four hundred feet of five-inch casing, at thirty-four cents per foot, amounting to one hundred and thirty-six dollars. This action was brought after work on the well was first abandoned, and before the second work was done upon it. Defendant claims that the suit was prematurely brought. This objection is not good, as applied to the cost of the casing. Plaintiff is entitled to judgment, and to have his lien established for the amount specified. The costs of this appeal will be equally divided between the parties. As thus MODIFIED, the judgment is AFFIRMED.

GRANGER, C. J., not sitting.